789 F.2d 632
 UNITED STATES of America ex rel. SHAKOPEE MDEWAKANTON SIOUX
COMMUNITY, Appellee,
v.
PAN AMERICAN MANAGEMENT COMPANY: New England Entertainment
Company, Appellants,
Dennis Courtney d/b/a New England Entertainment Company;
Alan Arbogast, d/b/a New England Entertainment
Company; Jim Arbogast, d/b/a New
England Entertainment Company;
John Panetta; d/b/a New England Entertainment Company, Appellant,
Michael Forshette d/b/a New England Entertainment Company;
Little Six Enterprises, Alfred Estrada, Appellants.
LITTLE SIX ENTERPRISES as General Partnership, Appellant,
v.
Donald P. HODEL Secretary, United States Department of the
Interior, John W. Fritz, Deputy Assistant
Secretary Indian Affairs, United States
Department of the Interior, Appellees,
and Shakopee Mdewakanton Sioux Community.
 Nos. 85-5279, 85-5280.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1985.
Decided April 30, 1986.
 
 George F. McGunnigle, Minneapolis, Minn., for appellants.
 Donald J. Simon and Peter C. Monson, Washington, D.C., for appellee.
 Before HEANEY, FAGG, and BOWMAN, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 These appeals arise out of a dispute over management agreements for bingo facilities operating on tribal trust lands. In United States of America ex rel. Shakopee Mdewakanton Sioux Community v. Little Six Enterprises, No. 85-5279, Little Six Enterprises (LSE) appeals from a district court order granting summary judgment voiding LSE's management agreements. In Little Six Enterprises v. Hodel, No. 85-5280, LSE appeals from a district court order granting summary judgment dismissing its challenge to the Interior Department's disproval of a management agreement.
 
 I. BACKGROUND
 
 2
 On April 10, 1982, the Shakopee Mdewakanton Sioux Community (Community), a federally-recognized Indian tribe, signed a management agreement allowing defendant New England Entertainment Company (New England) to develop and run a bingo operation on tribal lands. At the time they entered into this agreement, the federal government's position was that this type of agreement did not require approval by the Secretary of the Interior and the Commissioner of Indian Affairs pursuant to 25 U.S.C. Sec. 81.[1] The term of the agreement was to be fifteen years, and New England was to receive forty-five percent of the net operating profits after the retirement of the debt incurred in constructing and developing the facilities.[2] The agreement also provided that if the Community elected to establish any other bingo activities on its property, New England would have the right to compel the Community to enter into a new management agreement with the same terms. In 1982, New England assigned its interest in the agreement to New England/Pan American Entertainment Company (Pan American), which in turn assigned its interests to LSE. On July 8, 1983, LSE executed a new bingo hall management agreement with the Community, with terms essentially identical to the original agreement. On October 9, 1984, LSE and the Community entered into a separate management agreement for a new bingo lounge to be operated out of the Community Cultural Center.
 
 
 3
 On February 8, 1985, subsequent to a change in the Community's leadership, the Community filed a complaint in district court against LSE[3] pursuant to 25 U.S.C. Sec. 81, seeking damages, an accounting, and declaratory and injunctive relief.[4] It also filed a motion for partial summary judgment seeking to have the management agreements held null and void. LSE filed a counterclaim seeking damages and declaratory and injunctive relief.[5] On June 25, 1985, following a decision by John W. Fritz, Deputy Assistant Secretary-Indian Affairs, disapproving the management agreements, LSE instituted a separate action against Fritz and Donald P. Hodel, Secretary of the United States Department of the Interior, seeking judicial review of the administrative decision.[6] The government filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment.
 
 
 4
 On July 17, 1985, the district court heard the section 81 and administrative matters in conjunction, issuing a Memorandum Opinion and Order and a Judgment on August 9, 1985, 616 F.Supp. 1200.[7] In regard to the section 81 action, it granted the Community's motion for partial summary judgment, declaring the management agreements null and void. It denied LSE's motions for partial summary judgment and sanctions and for a stay pending the final disposition of the appeal from the administrative decision. In regard to the administrative appeal, the district court granted the government's motion for summary judgment and denied LSE's motions for preliminary injunctive relief and summary judgment. LSE appeals from the district court's orders in both actions.
 
 II. DISCUSSION
 
 5
 In United States of America ex rel. Shakopee Mdewakanton Sioux Community v. Little Six Enterprises, the section 81 action, and in Little Six Enterprises v. Hodel, the administrative action, LSE invokes the jurisdiction of this Court pursuant to 28 U.S.C. Secs. 1291[8] and 1292.[9] Although none of the parties argue this Court's lack of jurisdiction, we must consider the issue on our own motion where a question exists. See Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976); Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).
 
 
 6
 Section 1291 confers jurisdiction on the Courts of Appeals over "appeals from all final decisions of the district courts of the United States." "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). The district court's order in the section 81 action granting the Community's motion for partial summary judgment and declaring the management agreements void did not resolve the Community's claims for damages, an accounting, and injunctive relief. It also failed to resolve LSE's counterclaims. Additionally, the district court did not "direct the entry of a final judgment as to one or more but fewer than all of the claims" pursuant to Fed.R.Civ.P. 54(b). Accordingly, in the section 81 matter, LSE is appealing from an interlocutory order, and this Court has no jurisdiction pursuant to section 1291.
 
 
 7
 Although this Court has jurisdiction over certain interlocutory orders under 28 U.S.C. Sec. 1292, this section does not apply in the section 81 appeal. In their supplemental letter briefs, the Community and LSE argue that this Court should take jurisdiction pursuant to section 1292(a)(1), which confers jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions." As the Community admits, however, the district court's order technically did not grant an injunction, but merely declared the management agreements to be null and void. LSE points out that the Community's motion for summary judgment requested a permanent injunction pursuant to section 81. The district court, however, stopped short of granting the full relief requested. Additionally, the district court's order indicated that its intent was only to declare the agreements void. See Memorandum Opinion and Order at 3, 42. Because this Court has no jurisdiction over the section 81 action under either section 1291 or section 1292, we must dismiss this appeal.
 
 
 8
 Although there was a final decision in the administrative appeal action, the appeal must be dismissed as premature. The district court granted the government's motion for summary judgment in the administrative appeal action based on its finding in the section 81 action that the agreements were null and void. Logically, therefore, the question whether the management agreements fall under section 81 must be fully decided before the question whether the government properly reviewed and disapproved the agreements pursuant to that section can be considered. Since the section 81 action has not yet been fully decided, we must dismiss this appeal as premature.
 
 
 9
 Accordingly, the appeal from the district court's order in the section 81 action is dismissed for lack of jurisdiction, and the appeal from the district court's order in the administrative appeal action is dismissed as premature. These dismissals are without prejudice. If subsequent appeals are taken on these matters, they shall be submitted to this panel.
 
 
 
 [1]
 25 U.S.C. Sec. 81 provides:
 No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:
 First. Such agreement shall be in writing, and a duplicate of it delivered to each party.
 Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indians Affairs indorsed upon it.
 * * *
 All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid.
 
 
 [2]
 The bingo operation has been very profitable since its inception: the initial debt was repaid within the first year of operation, and the profit distributions to the Community and the parties managing the operations have been $3,321,000 and $2,685,000, respectively
 
 
 [3]
 The complaint also named as defendants Pan American, New England, John Panetta, Alfred Estrada, and Robert Page. The district court granted the defendants' motion for partial summary judgment dismissing the complaint against those defendants
 
 
 [4]
 In United States of America ex rel. Shakopee Mdewankanton Sioux Community v. Little Six Enterprises, the Community sought the following relief:
 (1) A temporary restraining order and preliminary injunction restraining LSE from removing any funds and records;
 (2) Preliminary and permanent injunctions restraining LSE from engaging in operations on the Community's property;
 (3) A declaration that the 1982 bingo hall and 1984 bingo lounge management agreements are null and void;
 (4) A declaration that the Tribe should get back all money paid to defendants;
 (5) Reimbursement of all money paid to defendants;
 (6) An accounting of all receipts and expenditures in the bingo operations; and
 (7) Costs and attorneys' fees.
 
 
 [5]
 The defendants' counterclaim requested:
 (1) Damages for breach of contract and for intentional tortious conduct;
 (2) Restitution or quantum meruit for the reasonable value of services already provided;
 (3) Preliminary and permanent injunctive relief restraining the Community from operating bingo activities;
 (4) A declaration that the management agreements are valid and enforceable; and
 (5) An order compelling the Community to arbitrate its disagreements with LSE, pursuant to the management agreement.
 
 
 [6]
 In Little Six Enterprises v. Hodel, LSE's complaint requested:
 (1) A preliminary injunction enjoining the effect of the government's June 17, 1985, administrative decision;
 (2) A declaration that the June 17, 1985, administrative decision is null and void.
 (3) A writ of mandamus requiring the Secretary of the Department of the Interior to approve the 1983 bingo hall management agreement; and
 (4) A permanent injunction ordering the Secretary to reconsider the 1983 bingo hall management agreement in the light of the regulations or policies in effect at the time the agreement was signed.
 
 
 [7]
 The district court's August 9, 1985, judgment ordered and adjudged that:
 
 
 [1]
 The motion in Civ. No. 4-85-880 of defendants Donald P. Hodel and John W. Fritz for summary judgment is granted, and the action is dismissed with prejudice in its entirety as to all defendants. 2. The motions in Civ. No. 4-85-880 of plaintiff Little Six Enterprises for preliminary injunctive relief and summary judgment are denied. 3. The motion in Civ. No. 4-85-231 of defendants Pan American Management Company, New England Entertainment Company, John Panetta and Alfred Estrada is granted to the extent that the complaint is dismissed against them without prejudice under Fed.R.Civ.P. 4(j). In all other respects defendants' motion for partial summary judgment and sanctions is denied. 4. The motion in Civ. No. 4-85-231 of plaintiff United States of America ex rel. Shakopee Mdewakanton Sioux Community for partial summary judgment is granted and the management agreements between Little Six Enterprises and the Shakopee Mdewakanton Sioux Community for the bingo hall and bingo lounge are hereby declared null and void. 5. The motion of defendants in Civ. No. 4-85-231 for a stay pending final disposition of Civ. No. 4-85-880 is denied as moot
 
 
 [8]
 28 U.S.C. Sec. 1291 provides:
 The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, * * * except where a direct review may be had in the Supreme Court. * * *
 
 
 [9]
 28 U.S.C. Sec. 1292 provides, in relevant part:
 (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
 (1) Interlocutory orders of the district courts of the United States, * * * or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;
 (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;
 (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.
 [ (4) Repealed. Pub.L. 97-164, Title I, Sec. 125(a), Apr. 2, 1982, 96 Stat. 36]
 (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal or such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.