**Dean G. VETTER, Plaintiff,**

v.

**FARMLAND INDUSTRIES, INC., Defendant.**

**No. C 94–3008.**

United States District Court,
N.D. Iowa,
Central Division.

Oct. 12, 1995.

John S. Allen, Professor, and Johna Gaffke and Pressley Henningsen, Student Interns, of the Clinical Law Program of the University of Iowa College of Law, Iowa City, Iowa, for Plaintiff Dean Vetter.

Stanley E. Craven of Spencer Fane Britt & Browne, Kansas City, Missouri, for Defendant Farmland.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL

BENNETT, District Judge.

### TABLE OF CONTENTS

I. BACKGROUND .................................................1449

II. LEGAL ANALYSIS .............................................1450
   A. Applicable Standards ....................................1450
      1. Standards for judgment as a matter of law ...........1452
      2. Standards for a new trial ...........................1453
      3. Disposition of alternative motions under Rule 50(b) ..1454
   B. Disposition Of Post-trial Motions .......................1455
      1. The motion for judgment as a matter of law ..........1455
      2. The motion for new trial ............................1457
   C. Relief ..................................................1458

III. CONCLUSION ................................................1460

Plaintiff, a member of the Jewish faith, was discharged from his employment after being told by a supervisor that "sometimes you have to choose between your religion and your job." The plaintiff chose his religion,

the employer snatched his job, and a jury rebuffed the plaintiff's claims of religious discrimination. The plaintiff had brought claims against his former employer for disparate treatment on the basis of religion and failure reasonably to accommodate his religion. The matter now before the court is the plaintiff's renewal of his motion, first made at the conclusion of evidence in the trial, for judgment as a matter of law on his accommodation claim. The plaintiff has also moved, in the alternative, for a new trial on both of his claims. The defendant, an agricultural products company that had employed the plaintiff, albeit briefly, as a livestock production specialist (LPS), asserts that the jury properly concluded that the plaintiff was fired for insubordination, because he refused to live in his sales territory and because he initiated a move to an unacceptable location at company expense without prior company approval. The defendant also asserts that the jury properly found that the defendant had made reasonable efforts to accommodate the plaintiff's religion or found that its duty to make reasonable accommodation was never triggered in this case.

## I. BACKGROUND

In this lawsuit, plaintiff Dean Vetter, a member of the Jewish faith, alleged that his employer, defendant Farmland Industries, Inc., subjected him to disparate treatment on the basis of his religion and failed to make reasonable accommodations for his religion. Vetter's complaint was in four counts. Counts I and III alleged disparate treatment on the basis of religion resulting in Vetter's discharge in violation of 42 U.S.C. § 2000e–2(a)(1) and Iowa Code § 216.6(1)(a), respectively. Vetter's disparate treatment claims were founded on allegations that after he informed his supervisor that he was Jewish and wished to live in Ames, Iowa, because it had an active Jewish community, Farmland officials for the first time imposed a requirement that he live within the Webster City trade area, and ultimately terminated him for not accepting inadequate housing within that trade territory. Counts II and IV alleged failure to make reasonable accommodations to Vetter's religious beliefs, also in violation of the same provisions of federal and state

law, respectively. Vetter's claims of refusal to make reasonable accommodation were based on his assertion that he was willing to maintain a residence for himself in Webster City, while his family lived in Ames, but that Farmland rejected this suggestion and failed to offer any other reasonable accommodation. Vetter sought damages for lost past and future income and benefits, emotional distress, suffering, inconvenience, and humiliation. Vetter also sought an award of his costs and attorneys fees, as well as such other relief as was just and proper.

On May 1, 1995, this court denied Farmland's motion for summary judgment on all of Vetter's claims. *See Vetter v. Farmland Indus., Inc.*, 884 F.Supp. 1287 (N.D.Iowa 1995). The court found genuine issues of material fact precluded summary judgment against Vetter on either his disparate treatment or failure to accommodate claims. The court concluded that, as to disparate treatment, there were genuine issues of material fact involving whether similarly situated employees who were not members of Vetter's faith received more favorable treatment in being allowed to live outside of their trade territories, and whether Vetter's discharge was pretextual. As to Vetter's accommodation claims, the court found genuine issues of material fact involving whether or not Vetter was entitled to reasonable accommodation for his belief that he needed to live in an active religious community, and whether Farmland had offered any reasonable accommodation.

The case therefore went to trial before a jury on June 12, 1995. On June 15, 1995, the jury rendered a verdict against Vetter on both his disparate treatment and failure to accommodate claims. The court entered judgment pursuant to the jury's verdicts on June 22, 1995. However, at the close of evidence, Vetter had moved for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(a) on his claim of failure reasonably to accommodate his religion, and the court had reserved ruling on that motion. On June 30, 1995, Vetter renewed his motion for judgment as a matter of law on the accommodation claim, and, alternatively, moved for a new trial pursuant to *Fed.R.Civ.P.* 59(a) on

both his accommodation claims and his disparate treatment claims.

Both parties have filed briefs on Vetter's post-trial motions. Vetter's brief was filed on June 30, 1995, followed by Farmland's resistance on July 17, 1995. Vetter then filed a reply brief on July 21, 1995. The court heard oral arguments on Vetter's motions on August 10, 1995. At the oral arguments, Vetter was represented by Professor John S. Allen and student interns Johna Gaffke and Pressley Henningsen of the Clinical Law Program of the University of Iowa College of Law in Iowa City, Iowa. Farmland was represented by Stanley E. Craven of Spencer Fane Britt & Browne in Kansas City, Missouri. Local counsel—who participated in pre-trial and trial, but was excused from taking part in the post-trial arguments owing to other commitments—was Margaret Prahl of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., in Sioux City, Iowa.

## II. LEGAL ANALYSIS

### A. Applicable Standards

■ Vetter has made post-trial motions pursuant to both *Fed.R.Civ.P.* 50 and *Fed. R.Civ.P.* 59. In resisting Vetter's post-trial motions, not only did Farmland fail to identify the appropriate standards for disposition of such motions, Farmland failed to cite a single case in support of its position on any issue. The court therefore deems it appropriate to examine the standards for disposition of Vetter's post-trial motions with some care. Federal Rule of Civil Procedure 50 entitled "Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings" states in relevant part:

(a) JUDGMENT AS A MATTER OF LAW.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) RENEWAL OF MOTION FOR JUDGMENT AFTER TRIAL; ALTERNATIVE MOTION FOR NEW TRIAL. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative....

*Fed.R.Civ.P.* 50(a) & (b).[1]

■ Under *Fed.R.Civ.P.* 50(b), a litigant's post-trial motion for judgment as a matter of law on any claim may not be entertained unless the movant previously moved for judgment as a matter of law on that claim at the close of all evidence pursuant to *Fed.R.Civ.P.* 50(a). *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.,* 53

---

1. While Rule 50 was amended effective December 1, 1993, the amendment was technical in nature. "[P]rior to 1991 amendments made to the Federal Rules of Civil Procedure, a Rule 50 motion was a motion for directed verdict or motion for judgment notwithstanding the verdict. The 1991 amendments merely changed the names of these motions, but the standard for application of this rule remains the same." *Jackson,* 836 F.Supp. at 1449. The Committee Notes to Rule 50 indicate:

This technical amendment corrects an ambiguity in the text of the 1991 revision of the rule, which, as indicated in the Notes, was not intended to change the existing standards under which "directed verdicts" could be granted. This amendment makes clear that judgments as a matter of law in jury trials may be entered against both plaintiffs and defendants and with respect to issues or defenses that may not be wholly dispositive of a claim or defense.

Fed.R.Civ.P. 50 advisory committee's note.

F.3d 195, 197 (8th Cir.1995) (post-trial motion for judgment as a matter of law may not advance additional grounds not raised in pre-verdict motion); *Smith v. Ferrel*, 852 F.2d 1074, 1075 (8th Cir.1988) (record disclosed that no motion for "directed verdict" had been made at the close of all evidence, "appellant therefore cannot question the sufficiency of the evidence either before the district court through a motion for judgment notwithstanding the verdict or on appeal."); *Hubbard v. White*, 755 F.2d 692, 695 (8th Cir.) (motion for "directed verdict" at the close of evidence was an "essential condition precedent" to a motion for "judgment notwithstanding the verdict," and where no such motion was made at the close of evidence, the j.n.o.v. motion was barred), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Myers v. Norfolk Livestock Mkt., Inc.*, 696 F.2d 555, 558 (8th Cir.1982); *see also George-town Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1541 (11th Cir.1993) (motion for j.n.o.v. is technically only a renewal of a motion for directed verdict made at the close of all evidence, and therefore cannot assert any additional grounds not stated in the pre-verdict motion); *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1214 (11th Cir.1991); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1261 (3d Cir.1991).[2] The motion for judgment as a matter of law at the close of the evidence must assert each of the grounds subsequently relied upon in a the post-trial motion for judgment as a matter of law. *Midamar Corp. v. National–Ben Franklin Ins. Co.*, 898 F.2d 1333, 1337 (8th Cir.1990); *Lowe v. Conlee*, 742 F.2d 1140, 1141 (8th Cir.1984); *see also Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 956 (5th Cir.1993); *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 671 (5th Cir.1993). Thus, a party who either fails to move for judgment as a matter of law on any claim at the conclusion of the evidence or fails to renew at that time a motion for judgment as a matter of law made earlier than the close of the evidence has waived a post-trial motion for judgment as a matter of law pursuant to

Rule 50(b), and instead must seek relief in a motion for new trial pursuant to *Fed.R.Civ.P.* 59. *Myers*, 696 F.2d at 558; *see also Purcell*, 999 F.2d at 956 (failure to renew motion waives right to file a post-verdict motion for judgment); *McCann*, 984 F.2d at 672 (motion for judgment as a matter of law made earlier than the close of evidence, but not renewed at the close of all evidence, "cannot serve as a predicate for a motion for judgment notwithstanding the verdict."); *Yohannon*, 924 F.2d at 1261 (party foreclosed from pursuing a motion for judgment notwithstanding the verdict for this reason is limited at the time of post-trial motions to a motion for new trial); *Riverview Inv., Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 477 (6th Cir.) ("party seeking a judgment n.o.v. must, as a prerequisite, move for a directed verdict at the close of all the evidence or renew such motion if made prior to the close of all the evidence."), *cert. denied*, 498 U.S. 855, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1330 (6th Cir.1988) (party who fails to renew prior motion waives the original motion and is precluded from questioning the sufficiency of the evidence on appeal). Vetter's pre-verdict motion for judgment as a matter of law was only as to his failure to accommodate claim. Therefore, Vetter can only move for a new trial on his disparate treatment claim, and in fact has only moved for that relief on that claim here, although he has met the prerequisite for consideration of his motion for judgment as a matter of law as to his accommodation claim.

Federal Rule of Civil Procedure 59 entitled "New Trials; Amendment of Judgments" states in relevant part:

(a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

*Fed.R.Civ.P.* 59(a).

---

2. The advisory note to the 1963 amendment to *Fed.R.Civ.P.* 50(b) "unequivocally states a 'motion for a judgment notwithstanding the verdict will not lie unless it was preceded by a motion

for directed verdict made at the close of the evidence.'" *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1214 (11th Cir.1991).

Because there has been some confusion in the district courts in this circuit,[3] and because there are substantial differences in the standards to be applied under Federal Rules of Civil Procedure 50 and 59, the court will examine the appropriate standard to be applied under each rule.

As the Eighth Circuit Court of Appeals stated in *White v. Pence*, 961 F.2d 776 (8th Cir.1992), "it is evident that the standards for considering a motion for j.n.o.v. [now a motion for judgment as a matter of law] differ thoroughly from those governing consideration of a motion for new trial." *Pence*, 961 F.2d at 779; *see also Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 800 (8th Cir.1994) (also distinguishing between the standards for judgment as a matter of law and for a new trial, citing *Pence*); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir.1994) (standards for resolving motions under the two rules differ; therefore, review of evidence under one rule cannot properly sustain decision under other rule), *cert. denied*, — U.S. —, 115 S.Ct. 1251, 131 L.Ed.2d 133 (1995). The court in *Pence* therefore carefully delineated the difference between the appropriate standards for these two motions. *Id.* This court will do likewise, taking *Pence* as its guide.

### 1. Standards for judgment as a matter of law

In determining a motion for j.n.o.v. (and in the current parlance of Federal Rule of Civil Procedure 50, a motion for "judgment as a matter of law"), the court in *Pence* observed that

the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a

weighing or evaluation of the evidence or consider questions of credibility. *See Dace v. ACF Indus., Inc.*, 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented*, 728 F.2d 976 (1984). We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* at 375; *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1407 (8th Cir.1987); *Brown [v. Syntex Lab., Inc.]*, 755 F.2d [668,] 671 [ (8th Cir.1985) ]. These principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence.

*Pence*, 961 F.2d at 779 (footnotes omitted); *see also Nelson*, 26 F.3d at 800 (citing these standards from *Pence*); *First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 808–09 (8th Cir.1993). Thus, this standard requires the district court to:

"consider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.*, 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 989 (8th Cir. 1989)); *see also Nelson*, 26 F.3d at 800 (reiterating these factors, citing *Pence*, 961 F.2d

---

**3.** In *United States v. Schay*, 746 F.Supp. 877, 880 (E.D.Ark.1990), *rev'd sub nom. White v. Pence*, 961 F.2d 776 (8th Cir.1992), the court stated:
[T]his court has, over the last several years, had occasion to consider the standard to be applied in ruling on motions for a new trial several times, and must confess that this court simply does not know with any certainty what standard is to be applied by the trial courts in this circuit. The court respectfully believes that this confusion is occasioned by changing and shifting language contained in various

opinions of the Court of Appeals for this circuit.
This confusion has apparently been alleviated by the court's decision in *White v. Pence*, 961 F.2d 776 (8th Cir.1992). "As to the standard to be applied in considering motions for a new trial, at least in this court's view, the 'law' in the Eighth Circuit before this court's decision in *White v. Pence*, 961 F.2d 776 (8th Cir.1992) had been cloudy, if not opaque." *Jackson v. Swift–Eckrich, Inc.*, 836 F.Supp. 1447, 1450 (W.D.Ark.1993), *aff'd*, 53 F.3d 1452 (8th Cir.1995).

at 779); *McAnally v. Gildersleeve,* 16 F.3d 1493, 1500 (8th Cir.1994) (same).

This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *McAnally,* 16 F.3d at 1500. However, even with this deference to the jury's verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,'" *McAnally,* 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 651 (8th Cir.1989), in turn quoting *Marcoux v. Van Wyk,* 572 F.2d 651, 653 (8th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)), but the court must still defer to the jury's resolution of conflicting testimony. *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979).

### 2. Standards for a new trial

In contrast, concerning motions for new trial under Federal Rule of Civil Procedure 59, the court in *Pence* observed:

> With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough*

*Power Equip.,* 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted). Similar language appears in *Brown,* 755 F.2d at 671–73; *Slatton [v. Martin K. Eby Constr. Co.],* 506 F.2d [505,] 508 n. 4 [ (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) ]; *Bates [v. Hensley],* 414 F.2d [1006,] 1011 [ (8th Cir.1969) ], and early authority cited in *Bates. See also Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1266 (8th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

*Id.* at 780. Thus, the court in *Pence* concluded that the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. *Id.; see also Shaffer v. Wilkes,* 65 F.3d 115 (8th Cir. filed Sept. 8, 1995) (citing *Pence* for this standard); *Rush v. Smith,* 45 F.3d 1197, 1203 (8th Cir.1995) (also citing *Pence* for this standard), *pet. for cert. filed,* 64 U.S.L.W. 3167 (Sept. 1, 1995); *Nelson,* 26 F.3d at 800 ("[A] motion for a new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice."); *Jacobs Mfg. Co.,* 19 F.3d at 1266 (correct standard for new trial is conclusion that "the [jury's] verdict was against the 'great weight' of the evidence, so that granting a new trial would prevent a miscarriage of justice.").[4]

---

4. Rule 59(a) specifically provides for the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States," Fed. R.Civ.P. 59(a), and the court does not mean to suggest that a verdict against the great weight of the evidence is the only ground for a new trial in a civil action. *See, e.g., Silbergleit v. First Interstate Bank of Fargo, N.A.,* 37 F.3d 394, 397 (8th Cir.1994) (new trial may be granted on the basis of a question by counsel that places prejudicial information before the jury, citing *Sanders–El v. Wencewicz,* 987 F.2d 483, 484 (8th Cir.1993), and *McBryde v. Carey Lumber Co.,* 819 F.2d 185, 188 (8th Cir.1987)); *Norton v. Caremark, Inc.,* 20 F.3d 330, 338 (8th Cir.1994) (noting that Fed. R.Civ.P. 61 specifically prohibits the grant of a new trial based on errors in admission of evidence, "unless refusal to take such action appears to the court inconsistent with substantial justice."); *Fink v. Foley–Belsaw Co.,* 983 F.2d 111, 114 (8th Cir.1993) (improper jury instruction or failure to comply with Rule 51 may be ground for new trial, but only if moving party can show material prejudice); *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 385 (8th Cir.1992) (misconduct of counsel may be grounds for new trial, but the court must judge whether there has been an effect on the substantive rights of the parties, or whether the misconduct created undue prejudice or passion tainting the proceedings, particularly in light of whether the district court concludes that an effective curative instruction has been given). However, Vetter has only moved for a new trial on the ground that the

■ Although the district court's grant or denial of a motion for new trial is accorded "great deference," and will be reversed "only upon a strong showing of abuse," the district court's discretion "is not boundless." *Shaffer,* 65 F.3d at 117 (citing for the "great deference" standard, *Brown v. Syntex Labs., Inc.,* 755 F.2d 668, 673 (8th Cir.1985), and for the standard for reversal, *King v. Davis,* 980 F.2d 1236, 1237 (8th Cir.1992)); *see also Nelson,* 26 F.3d at 800 (review of denial of a motion for new trial is reviewed for abuse of discretion); *TEC Floor Corp. v. Wal–Mart Stores, Inc.,* 4 F.3d 599, 602 (8th Cir.1993) (review is for abuse of discretion); *Fink v. Foley–Belsaw Co.,* 983 F.2d 111, 115 (8th Cir.1993) (grant or denial of new trial on the basis that the verdict is against the great weight of the evidence is " 'virtually unassailable on appeal,' " quoting *Bissett v. Burlington N. R.R. Co.,* 969 F.2d 727, 730 (8th Cir.1992)); *Morgan v. City of Marmaduke,* 958 F.2d 207, 210–11 (8th Cir.1992) (review is for abuse of discretion).

■ First, the district court's discretion is bounded in review and reassessment of the evidence:

> [T]he district court cannot simply "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." [*Pence,* 961 F.2d] at 780, citing, *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

*Shaffer,* 65 F.3d at 117 (but district court in that case had properly rejected the testimony of one party's witness, and accepted that of a witness for the opposing party, to come to a conclusion contrary to that of the jury concerning which party breached a contract). Hence, "when the evidence is such that reasonable persons could differ as to the result, such as a direct conflict in credible and plausible evidence, the determination is properly left to the jury." *Rush,* 45 F.3d at 1203 (citing *Pence,* 961 F.2d at 781, which in turn cites *Aalco Wrecking Co.,* 466 F.2d at 187). To weigh testimony properly, the court must

find testimony supporting the verdict unworthy of belief or find "a significant weight factor" favoring contrary testimony; it may not simply find the testimony supporting the verdict at odds with other evidence, then decide that "a reasonable jury could not fairly conclude" that an element of the plaintiff's claim has or has not been proved. *Jacobs Mfg. Co.,* 19 F.3d at 1267 (citing *Pence,* 961 F.2d at 781). Rather, the evidence supporting the verdict must be found by the court not to be credible or the court must find that evidence can be "otherwise properly reject[ed]." *Id.*

■ The district court's discretion is further bounded by the requirement that it must articulate the reasons for its conclusion that the jury's verdict is against the great weight of the evidence. *Shaffer,* 65 F.3d at 117; *Jacobs Mfg. Co.,* 19 F.3d at 1266 (it is inadequate for court to state "for all of the reasons previously discussed" as ground for granting new trial, particularly if the reasons previously discussed were in relation to a motion for judgment as a matter of law, because standards for resolving the two kinds of motions differ); *Pence,* 961 F.2d at 781; *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1409 (8th Cir.1987). However, the court properly exercises its discretion, for example, when the articulated reasons include the court's conviction that, given the evidence presented at trial, the jury "either did not truly understand what it was necessary for [the plaintiff] to show, or if it did understand, decided to [render a verdict for or against the plaintiff] in spite of the facts and law." *Shaffer,* 65 F.3d at 118 (quoting the district court's conclusion).

### 3. *Disposition of alternative motions under Rule 50(b)*

■ As a further matter, *Fed.R.Civ.P.* 50(b), which specifically provides for Vetter's filing of an alternative motion for new trial with the renewal of his motion for judgment as a matter of law originally made pursuant to *Fed.R.Civ.P.* 50(a), also explains how the court is to resolve the alternative motions.

jury's verdict on each of his claims was against    the great weight of the evidence.

The rule provides, in pertinent part, as follows:

A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. *If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.*

*Fed.R.Civ.P.* 50(b). In this case, a verdict was indeed returned. As the court reads this rule, the court's ultimate disposition of Vetter's alternative motions will either allow the judgment to stand or will instead reopen the judgment. If the court allows the judgment to stand, it will obviously deny both of Vetter's alternative motions. However, pursuant to this rule, if the court reopens the judgment, the court must do so by making one of two possible dispositions of the case: it must either order a new trial or must instead direct the entry of judgment as a matter of law. Thus, although the rule provides for alternative post-trial motions by a party dissatisfied with a jury verdict, the court cannot make alternative dispositions, granting both post-trial motions in the alternative. Instead, the court must grant only one of the alternative motions, either the motion for new trial or the motion for judgment as a matter of law. *Fed.R.Civ.P.* 50(b).

With these principles in mind concerning the standards for resolving post-trial motions under Federal Rule of Civil Procedure 50 and 59, the court turns to an examination of the evidence proffered at trial in support of and in defense to Vetter's claims to determine whether post-trial relief from the jury's verdicts against Vetter is appropriate.

## B. *Disposition Of Post-trial Motions*

### 1. *The motion for judgment as a matter of law*

■ The court begins its analysis of Vetter's post-trial motions by considering evidence proffered at trial under the standards for disposition of a motion for judgment as a matter of law pursuant to Rule 50. The court's consideration therefore concerns only the evidence in support of and contrary to Vetter's claim of lack of reasonable accommodation. Recognizing that the court must accept as true all facts the evidence offered by the defendant, the prevailing party, tends to prove, and draw all favorable inferences that reasonably can be drawn from defendant's evidence, *Nelson,* 26 F.3d at 800; *McAnally,* 16 F.3d at 1500; *Pence,* 961 F.2d at 779; *Minneapolis Community Dev. Agency,* 928 F.2d at 301; *Atlas Pile Driving Co.,* 886 F.2d at 989, the court nonetheless finds that there is not a scintilla of evidence of reasonable accommodation by Farmland in this case. To the contrary, the evidence points one way, Vetter's way, and is susceptible of no reasonable inference sustaining the position of Farmland. *Nelson,* 26 F.3d at 800; *First Dakota Nat'l Bank,* 2 F.3d at 808–09; *Pence,* 961 F.2d at 779; *Washburn,* 831 F.2d at 1407; *Brown,* 755 F.2d at 671.

■ In order to prevail on his claim of failure reasonably to accommodate his religion, Vetter was required to prove that he had a bona fide belief that compliance with an employment requirement was contrary to his religious faith, that he informed his employer about the conflict, and that he was discharged for refusing to comply with the employment requirement. *Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671, 673 (8th Cir.1985) (*prima facie* case of religious discrimination under 42 U.S.C. §§ 2000e–2(a)(1) (prohibited practices) & (j) (accommodation requirement) consists of these elements). Furthermore, the plaintiff must demonstrate not only that accommodation of his religion was possible, but that it was also "reasonable." *See, e.g., Mann v. Frank,* 7 F.3d 1365, 1368–70 (8th Cir.1993) (two-prong analysis of accommodation); *accord Cooper v. Oak Rubber Co.,* 15 F.3d 1375, 1379–80 (6th Cir.1994).

■ The evidence proffered at trial, properly considered in light of the standards stated, for example, in *Nelson,* 26 F.3d at 800, shows that Farmland suggested Fort Dodge as an alternative place for the Vetters to live, but that Fort Dodge had no active synagogue. The testimony offered at trial therefore indicates that Fort Dodge was an

"accommodation" only to the extent that it was not in Vetter's trade territory, as the boundaries of that trade territory were shown at trial through the testimony of Farmland's witness, Mr. Gleckler, and exhibits introduced at trial as showing the relevant trade territory. However, because Fort Dodge lacked precisely the active religious community Vetter's beliefs required, it failed to address Vetter's central religious conflict. As a matter of law, a proposed accommodation that fails to resolve the employee's religious conflict, or resolves only part of it while completely ignoring the rest, is insufficient. *Cooper*, 15 F.3d at 1378–79.

Although Ames, Vetter's religiously motivated choice, was further from Webster City than Fort Dodge, the location Farmland suggested, there is no evidence that Ames was unreasonably less accessible or convenient than Fort Dodge. Nor was there any evidence that Ames imposed more than *de minimis* costs on Farmland. *Mann*, 7 F.3d at 1368–69 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), for this *de minimis* standard); *Cook v. Chrysler Corp.*, 981 F.2d 336, 338–39 (8th Cir.1992) (citing similar standards, and also relying on *Hardison* ), cert. *denied,* —— U.S. ——, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993). Contrary to any assertion that Vetter's requested accommodation, living in Ames, was not reasonable, all of the evidence presented at trial demonstrates that Vetter was willing to absorb any additional expense or inconvenience to Farmland that might arise from his family residing in Ames, including a willingness to bear all expenses of the commute or to find a place for himself to live during the week in Webster City while his family resided in Ames. Thus, there is no evidence from which a reasonable jury could conclude that Ames was an accommodation that imposed "undue hardship" on Farmland, and therefore was not "reasonable." *Mann*, 7 F.3d at 1369 (no accommodation is "reasonable" if it imposes "undue hardship" upon the employer); *accord Lee v. ABF Freight Sys., Inc.*, 22 F.3d 1019, 1023 (10th Cir.1994); *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir.1993).

Farmland also contended that accommodating Vetter's religious beliefs by allowing him to live outside of his trade territory would interfere with Farmland's relationship with the Webster City Co-op, because the Co-op required the Farmland LPS to live within the Co-op's trade territory. Farmland argued that such interference with its relationship with the Co-op was more than a *de minimis* cost of such an accommodation. However, there is no evidence of a contract between the Co-op and Farmland requiring LPSs to live within the Co-op's trade territory. Nor was there any evidence introduced that relations with the Co-op would suffer more as the result of Vetter's residence outside of the Co-op's trade territory in Ames than outside the trade territory in Fort Dodge, and Farmland representatives testified that they were willing to allow Vetter to live outside of his trade territory in Fort Dodge.

Furthermore, the testimony of Mr. Gleckler demonstrated that Farmland in fact had no written policy of its own requiring LPSs to live within their trade territories. Although the court would not find that such a policy existed in any form, because the same Farmland representatives who testified to its existence testified that Fort Dodge, which was outside of the trade territory, was acceptable, the court concedes that a reasonable jury could find from the testimony of Farmland employees that such a policy existed, although apparently only as an "understanding" or de facto policy. However, such a policy applied in this case would violate Title VII's requirements that an employer provide reasonable accommodation to an employee's religious beliefs. 42 U.S.C. § 2000e(j). Thus, there is a dearth of evidence that Farmland provided any reasonable accommodation, and a dearth of evidence that it could not do so. *Mann*, 7 F.3d at 1368–70 (two-prong analysis of accommodation); *accord Cooper*, 15 F.3d at 1379–80.

Farmland attempts to skirt this complete lack of evidence in support of any attempt at reasonable accommodation by asserting instead that the jury could reasonably have concluded that Farmland was never on notice of a conflict between its residency require-

ment and Vetter's religion, and that Vetter's desire to live in a Jewish community was not a sincerely held belief. *Johnson*, 762 F.2d at 673 (elements of accommodation claim include showing that plaintiff had sincerely held religious belief in conflict with employment requirement and that plaintiff informed employer about the conflict of an employment requirement with the employee's religious beliefs). As to the "notice" issue, Farmland points to evidence that Vetter indicated in interviews that he was willing to live within his trade territory, he sought housing there, and only turned to Ames as an alternative when he was unable to find "suitable" housing in Webster City. Thus, Farmland contends, a reasonable jury could find from the evidence that Farmland had no notice that there was a conflict between Vetter's religion and Farmland's requirement that Vetter live within his trade territory. Farmland contends that this same evidence, coupled with Vetter's residence in a non-Jewish community for the two years preceding his employment with Farmland, is enough for a reasonable jury to find that Vetter had no sincerely held religious belief that he must live in a religious community.

Yet the evidence demonstrates unequivocally, from the testimony of Farmland's own employees, including Mr. Gleckler, who was Vetter's immediate supervisor, as well as other managerial employees, that Vetter made clear to them that he perceived a conflict between his religious beliefs and residence in a non-Jewish community. Mr. Gleckler testified at trial that he knew, prior to Vetter's discharge, that Vetter was Jewish, and that Vetter explained that he wanted to live in Ames because Ames had a synagogue and active Jewish community. Furthermore, Mr. Gleckler testified that Vetter was never shown a map detailing what towns were or were not within the trade territory at the time he was interviewed, because such a map did not exist until litigation in this case arose. The only reasonable inference that can be drawn from the evidence is that Vetter believed, at the time he was interviewed, that he would be able to find housing in a community that met both his needs and those of his employer. Mr. Gleckler also testified that some of Farmland's LPSs were allowed to live outside of their trade territories. This evidence must also be considered in relation to Mrs. Vetter's testimony that Mr. Gleckler told her that "sometimes you have to choose between your religion and your job." No reasonable jury could find, in light of all of this evidence, that Farmland had no notice of a conflict between Vetter's religion and his residence within some ill-defined trade territory.

Nor could a reasonable jury doubt the sincerity of Vetter's beliefs that he was required by his religion to live in an active Jewish community on the ground that Vetter had previously resided at some distance from a synagogue or active Jewish community. Although an employer need not accommodate purely personal preferences, *Brown v. General Motors Corp.*, 601 F.2d 956, 960 (8th Cir.1979), all of the evidence offered at trial points instead to the sincerity of Vetter's belief rather than to a purely personal preference. Vetter presented the testimony of Rabbi Stanley Herman, who affirms that "[l]iving in an active Jewish community with an active synagogue is essential to the sustenance of one's faith as a Jew, so much so it rises to the level of being a mitzvah (Jewish law)." Furthermore, Farmland was unable to contradict evidence that the Vetters had gone to rather extraordinary lengths while living in Muscatine to find and participate in an active Jewish community by seeking out a distant synagogue to attend and participate in its activities; the Vetters continued to find ways to participate in a Jewish community after Farmland terminated Vetter; and further evidence of the growth of the Vetters' faith during the years in question. *See Cooper*, 15 F.3d at 1379; *Heller*, 8 F.3d at 1439.

The court therefore concludes that Vetter's motion for judgment as a matter of law on his claim that Farmland failed to make reasonable accommodation to his religion should be granted.

### 2. *The motion for new trial*

Because the court has granted the motion for judgment as a matter of law, the court will not here address Vetter's alternative motion for a new trial. *Fed.R.Civ.P.* 50(b).

Ruling is therefore reserved on Vetter's motion for new trial as to both of his claims.[5]

However, because the court has granted Vetter's motion for judgment as a matter of law on his claim of failure to make reasonable accommodation to his religion, the court must next consider Vetter's entitlement to relief on that claim.

## C. Relief

Vetter's entitlement to relief as the result of the court's judgment in his favor on his accommodation claim involves two questions. First, the question arises whether Vetter's "insubordination" in attempting to move to Ames, which precipitated his termination, cut off his entitlement to damages for Farmland's failure to accommodate his religion. The second question is whether the court can now afford Vetter the relief to which he is entitled.

As to Vetter's entitlement to relief on his accommodation claim, under Title VII, where an employer proves that it would have made the same adverse employment decision "in the absence of the impermissible motivating factor," *see* 42 U.S.C. § 2000e–5(g)(2)(B), the court may grant declaratory relief and some attorney's fees and costs, *see* 42 U.S.C. § 2000e–5(g)(2)(B)(i), but not reinstatement, back pay, or damages. *See* 42 U.S.C. § 2000e–5(g)(2)(B)(ii); *see also Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir.1995) (drawing analogy between these requirements of Title VII for race, sex, age, and religious discrimination with disability discrimination under the Americans with Disabilities Act). Here, presumably, the argument would run that Farmland terminated Vetter for insubordination, and would have

done so or did do so even in the absence of any consideration of Vetter's religion. The jury vindicated Farmland's view to the extent that it found no disparate treatment on account of religion in Vetter's termination. However, the disparate treatment claim was not submitted to the jury on a theory of "mixed motive" discrimination. *See, e.g.,* 42 U.S.C. § 2000e–2(m) ("motivating factor" discrimination also prohibited); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (analytical framework and authorization for "mixed motive" discrimination claim); *Kriss v. Sprint Communications Co., Ltd.*, 58 F.3d 1276, 1280–83 (8th Cir.1995) (citing *Price Waterhouse* for authority for "mixed motive" discrimination claims); *Tolefree v. City of Kansas City, Mo.*, 980 F.2d 1171, 1174 (8th Cir. 1992) (*Price Waterhouse* analysis of "mixed motive" claim), *cert. denied*, —— U.S. ——, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993). The court believes that the record demonstrates that Farmland's decision to terminate Vetter for "insubordination" was not made "in the absence of the impermissible factor" of his demand for reasonable accommodation of his religion. *See, e.g., Sargent v. Paul*, 16 F.3d 946, 948 (8th Cir.1994) ("mixed-motive" analysis under *Price Waterhouse* is appropriate if, *inter alia*, " 'the trial court finds that a discriminatory reason was a discernible factor in the employer's decision-making process,' " quoting *Schleiniger v. Des Moines Water Works*, 925 F.2d 1100, 1101 (8th Cir. 1991)). However, the court's conclusion that Vetter is entitled to the full amount of any damages resulting from Farmland's failure reasonably to accommodate his religion is not based on this ground.

---

5. In the event the court's ruling granting Vetter's motion for judgment as a matter of law on his failure to accommodate claim is overturned on appeal, this court will grant the alternative motion for new trial, at least as to Vetter's claims of failure to accommodate his religion. Even if a reasonable jury could have denied Vetter's accommodation claims, making judgment as a matter of law erroneous, *see, e.g., Nelson*, 26 F.3d at 800, the court would nonetheless find that the jury's verdict on both Vetter's disparate treatment and failure to accommodate claims was against the great weight of the evidence and

resulted in a miscarriage of justice. *See, e.g., Shaffer*, 65 F.3d at 117; *Rush*, 45 F.3d at 1203; *Jacobs Mfg. Co.*, 19 F.3d at 1266; *Pence*, 961 F.2d at 779. From its review of the weight of the evidence, the court concludes, as did the district court in *Shaffer*, that, given the evidence presented at trial, the jury "either did not truly understand what it was necessary for [Vetter] to show, or if it did understand, decided to [render a verdict against Vetter] in spite of the facts and law." *Shaffer*, 65 F.3d at 118 (quoting the district court's conclusion). A new trial would therefore be required even if the court's entry of judgment as a matter of law was erroneous.

What is important to the court's conclusion that Vetter's termination for "insubordination" in no way terminates or limits his entitlement to the full amount of any damages available for failure to accommodate his religion is that Farmland's failure to accommodate occurred before any "insubordination" by Vetter in seeking to move to Ames, and, indeed, was the "but for" cause of any "insubordination" by Vetter: but for Farmland's failure reasonably to accommodate his religion, Vetter would never have initiated a move to Ames at company expense without company approval. To put it another way, if Farmland had reasonably accommodated Vetter's religious beliefs, his asserted "insubordination" would never have occurred. The jury, in concluding that there had been no disparate treatment, having also found no failure to accommodate Vetter's religion, obviously disregarded the fact that but for Farmland's failure to accommodate Vetter's religion, there would have been no "non-discriminatory" ground for a discharge based on "insubordination." However, under Title VII, an employee who has been subjected to discrimination is entitled to damages calculated to restore the employee to the position he or she would have enjoyed but for the employer's discrimination. *Jones v. American State Bank,* 857 F.2d 494, 499 (8th Cir.1988) (damages calculated on employee's position "but for" employer's discrimination); *see also EEOC v. Cherry–Burrell Corp.,* 35 F.3d 356, 359 (8th Cir.1994) (42 U.S.C. § 2000e–5(g) sets out the pertinent provisions about relief to an aggrieved party under Title VII, including damages and equitable relief for discrimination "as appropriate" for injuries suffered "on account" of discrimination). The court cannot envision a construction of Title VII that permits an employer to refuse reasonable accommodation of an employee's religion, placing the employee in the untenable position of choosing between adherence to the dictates of religion or the dictates of the employer, that also permits the employer to be relieved of the burden of damages to the employee for the employer's refusal to accommodate, because the employee subsequently chooses to follow the dictates of the employee's religion rather

than those of the employer. *Winbush v. State of Iowa,* 66 F.3d 1471, —— (8th Cir. 1995) ("Title VII's clear purpose is 'to make persons whole for injuries suffered on account of unlawful employment discrimination,'" quoting *Hameed v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 396,* 637 F.2d 506, 522 (8th Cir.1980), in turn citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)). Such a construction would make Title VII's requirement of reasonable accommodation of religion a truly toothless lion.

Finally, although, as the foregoing demonstrates, Vetter is not entitled to any less relief because of the denial of his disparate treatment claim, conversely, even had Vetter prevailed on his claim of disparate treatment, he would be entitled to no further relief than he will obtain for prevailing on his failure to accommodate claim. *Cherry–Burrell Corp.,* 35 F.3d at 359 (same relief provision applies to all claims of violation of Title VII). The court therefore concludes that the jury's denial of Vetter's claim of disparate treatment has no impact upon Vetter's entitlement to damages for Farmland's failure reasonably to accommodate his religion.

Although the first question left for the court concerning relief on the accommodation claim is thereby settled, because the court concludes that Vetter is entitled to his full measure of damages, the second question, which may be more quickly disposed of, is whether the court can afford that relief at this time. The parties have stipulated to the economic damages Vetter sustained as the result of the termination of his employment. However, the case was also submitted to the jury on claims for damages for emotional distress and punitive damages. A trial is necessary to determine what, if any, damages Vetter is entitled to for emotional distress as the result of Farmland's failure reasonably to accommodate his religion, as well as to determine whether an award of punitive damages is appropriate. The court will therefore set such a trial on damages after consulting with the parties.[6]

---

6. The court had hoped that its disposition of the

post-trial motions would be immediately appeal-

## III. CONCLUSION

Vetter is entitled to judgment as a matter of law on his claim that Farmland failed reasonably to accommodate his religion. There is not a scintilla of evidence supporting Farmland's contention that it made reasonable accommodation to Vetter's religion, even giving all deference to what defendant's evidence reasonably proved and the inferences reasonably arising from that evidence. The court therefore grants Vetter's motion for judgment as a matter of law on his accommodation claim and reserves ruling on Vetter's alternative motion for new trial on both the accommodation and disparate treatment claims.

In light of its conclusion that Vetter is entitled to judgment as a matter of law on his accommodation claim, and the parties' stipulation as to Vetter's economic damages, the court will set a trial on whether Vetter is also entitled to damages for emotional distress or punitive damages for Farmland's failure to accommodate Vetter's religion. The adverse verdict of the jury on Vetter's disparate treatment claim has no impact on the damages questions, because denial of that claim does not reduce Vetter's damages for failure to accommodate where but for

able, recognizing that if the appellate court held that judgment as a matter of law for Vetter on his failure to accommodate claim was erroneous, the parties could potentially be subjected to three trials: the first trial, following which the court has set aside the jury's verdict; a second trial, pursuant to this order, on emotional distress and punitive damages; and, finally, a third trial, this time a complete retrial, following remand by the court of appeals and this court's order for a new trial. However, the court does not believe that the present order will be immediately appealable. Federal Rule of Civil Procedure 54(b) provides for immediate appeal of a judgment on fewer than all of the claims involved in the litigation if the district court makes "an express determination that there is no just reason for delay," but the court believes that the unresolved damages issues on Vetter's failure to accommodate claim leave a judgment of liability on that claim outside the scope of a Rule 54(b) appeal. *See, e.g., Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 487 (8th Cir.1992) (Rule 54(b) is inapplicable to "'[a] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right,'" because such a complaint "'states a single claim for relief,'" quoting *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976), and concluding that there was no final judgment as to an ADEA claim, even though liability was decided, and the remaining issues were "willfulness," and hence liquidated damages, even where the "willfulness" determination required an "additional quantum of evidence," because such a determination "is made from the 'same nucleus of operative fact' that defines the single [discrimination] claim," quoting *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir. 1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)); *United States ex rel Shakopee Mdewakanton Sioux Community v. Pan American Management Co.*, 789 F.2d 632, 636 (8th Cir.1986) (district court's order declaring agreements for management of bingo operation on Indian tribal lands to be void, but which did not resolve tribal community's claims for

damages, an accounting, and injunctive relief, was an "interlocutory order" not appealable under *Fed.R.Civ.P.* 54(b)); *see also Justice v. Pendleton Place Apartments*, 40 F.3d 139, 141 (6th Cir.1994) (order was not appealable under Rule 54(b) where claim resolved was interrelated to other claims and damages were not considered); *Dillon v. State of Miss. Military Dep't*, 23 F.3d 915, 917 & n. 3 (5th Cir.1994) (order is not appealable under Rule 54(b), because it is not a final judgment, where it does not end the litigation on the claim, but, for example, leaves issue of damages undecided); *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1028 (6th Cir. 1994) ("'[W]hen a plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and [Rule 54(b)] does not apply,'" quoting Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE· CIVIL 2D § 2657 (1983 & Supp.1993)).

Similarly, 28 U.S.C. § 1292(b), which provides for interlocutory appeals in certain circumstances, appears to this court to be inapplicable, because the grant of the motion for judgment as a matter of law is not one "involving a controlling question of law as to which there is substantial ground for difference of opinion and [one on which] an immediate appeal from the order may materially advance the ultimate termination of the litigation." The court's disposition of the motion for judgment as a matter of law is not based on a controlling question of law involving substantial ground for difference of opinion, but instead is based on its conclusion that no reasonable jury could have reached such a verdict on the evidence before it. Therefore, although the court recognizes that justice might be better served and this litigation might be materially advanced by disposition of any appeal prior to a trial on the damages issues, the court finds no procedural pathway to such an appeal. Of course, the parties are free to explore for themselves the issue of the appealability of this order and to suggest a different resolution, if one can be found, that would make this ruling immediately appealable.

Farmland's refusal reasonably to accommodate his religion, Vetter's supposed "insubordination," for which he was terminated, would never have arisen. However, because a damages trial is still required, entry of judgment pursuant to this order is deferred until after a trial on the remaining damages issues.

IT IS SO ORDERED.