Jesse L. **COOK**, Appellant,

v.

**CHRYSLER CORPORATION;** United Automobile Aerospace, Agricultural Implement Workers Local 110, Appellees.

No. 92–1385.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1992.

Decided Dec. 7, 1992.

Rehearing Denied Jan. 21, 1993.

---

Lee Boothby, Washington, DC, argued, for appellant.

Charles M. Poplstein, St. Louis, MO, argued, for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BEAM, Circuit Judge.

Jesse Cook appeals an adverse decision in an action for religious discrimination in employment. We affirm.

## I. BACKGROUND

Jesse Cook was employed on the assembly line at Chrysler's St. Louis plants from 1976 until 1986, when he was terminated for excessive absences. Cook is a Seventh Day Adventist. His religious beliefs prohibit work from sundown Friday to sundown Saturday. The terms and conditions of Cook's employment are determined in part by a national collective bargaining agreement between Chrysler and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW or Union). This national agreement is supplemented by local agreements between Chrysler and the UAW local representing employees at each Chrysler plant. Under the agreement applicable to Cook, seniority is determined on a plant-by-plant basis and seniority at a plant prevails over seniority with the corporation. Shift assignments at the St. Louis plants are determined by seniority.

Cook was laid-off at Chrysler St. Louis Assembly Plant I and was later offered a position at St. Louis Assembly Plant II, with a loss of seniority.[1] Because he had no seniority at Plant II, he was placed on the evening shift, which requires that he work on Friday nights. He could have retained his seniority if he had remained on lay-off until recalled to Plant I.

The collective bargaining agreement provides a negotiated no-fault absenteeism policy, known as the Uniform Attendance Procedure. The policy deals with excessive and chronic absenteeism and provides a six-step system of progressive discipline and also provides grievance and arbitration procedures. Any employee absent more than twenty percent of his regularly scheduled time is subject to discharge. In addition, the local agreement at plant II was amended in 1985 to address the particular prob-

---

1. The conditions for transfer between plants are also determined by the collective bargaining agreement.

lem of Friday night absenteeism. Under the amended system, known as the "excused in advance system" or "book procedure," employees could sign up in a book for an excused day off on a first-come-first-serve basis. Fridays are most sought for excused absences.

After his transfer to Plant II in January, 1986, Cook informed his supervisor of the need for accommodation of his religious beliefs. Cook proposed a shift change, working on a Sunday instead of Friday, or a flexible schedule. His supervisor contacted the union shop steward and the labor relations supervisor in an effort to find an accommodation. Cook missed work every Friday night and was late every Saturday night. He was disciplined after his sixth and seventh absences, pursuant to the six-step procedure for discipline, but was not disciplined for eight subsequent absences while Chrysler and the UAW investigated his request. He was then informed that Chrysler could not accommodate him by changing his shift. Cook continued to miss work on Fridays and was eventually terminated.

Cook brought suit against Chrysler and the UAW (collectively, "defendants") in district court under Title VII of the Civil Rights Act of 1964. He alleged he was terminated by Chrysler on the basis of his religion and also alleged that the Union failed to represent him on the basis of his religion. The district court entered judgment for defendants after a bench trial. 779 F.Supp. 1016. The district court found that Chrysler's efforts to accommodate Cook satisfied the requirements of Title VII and that the Union had not breached any duties to Cook.[2]

On appeal, Cook essentially contends that there is insufficient evidence to support the judgment. He further contends that the district court misinterpreted applicable law.

## II. DISCUSSION

■ Section 701(j) of Title VII provides that employers must "reasonably accommo-

date" the religious beliefs or practices of their employees unless doing so would cause the employers to suffer undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977). The statutory language does not make clear the precise reach of this obligation. *Id.* at 74, 97 S.Ct. at 2271. Although neither a collective bargaining agreement nor a seniority system may be employed to violate Title VII, the duty to accommodate does not require an employer to take steps inconsistent with an otherwise valid agreement. *Id.* at 79, 97 S.Ct. at 2274. It is "anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others." *Id.* at 81, 97 S.Ct. at 2275. Title VII does not require an employer to go that far. *Id.* Differential treatment resulting from accommodation runs afoul of section 2000e–2(a)(1) (which sets forth unlawful employment practices) if it: 1) compromises other employees' contractual seniority rights as secured by a collective bargaining agreement; or 2) confers a privilege, the cost of which is more than *de minimis*, solely on the basis of the recipient's religious beliefs. *Brown v. General Motors Corp.*, 601 F.2d 956, 962 (8th Cir.1979). The present case presents both such situations.

■ First, accommodating Cook would compromise other employees' contractual rights as secured by the collective bargaining agreement. The collective bargaining agreement provides both a system for determining seniority and an absenteeism policy. Efforts to accommodate Cook would violate the terms of the collective bargaining agreement and contravene the "book" procedures. Cook's first proposal for a change of shift would contravene the seniority provisions. It is not disputed that shift preference is a highly prized aspect of

---

**2.** There is no dispute that Cook's religious beliefs are sincere and that he established a prima facie case of discrimination.

seniority. The record shows that Chrysler approached the Union and tried to find a way to accommodate Cook. The Union was not willing to grant Cook a change of shift out of line with seniority. Chrysler's efforts satisfied the requirements of Title VII in view of the obstacles presented by the collective bargaining agreement. *See Trans World Airlines, Inc. v. Hardison,* 432 U.S. at 83 n. 14, 97 S.Ct. at 2276 n. 14.

Further, the collective bargaining agreement, coupled with the "book" method for obtaining days off, in itself provided an accommodation of Cook's religious needs. *Id.* at 78, 97 S.Ct. at 2273 (seniority system, establishing neutral way to minimize occasions when an employee would have to work on a day he would prefer to have off, was in itself a significant accommodation to the religious and secular needs of employees). *See also Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671, 674 (8th Cir.1985) (stating in dicta that a collective bargaining agreement provided a reasonable accommodation).

Second, the district court found that accommodating Cook would result in more than a *de minimis* cost to Chrysler. The district court's conclusion in this regard is ultimately a finding of fact. In particular, we will upset findings of undue hardship and more than *de minimis* cost only if clearly erroneous. *Lake v. B.F. Goodrich Co.,* 837 F.2d 449, 451 (11th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

Though we might have reached another conclusion, there is evidence to support the district court's finding that more than *de minimis* cost was involved. We cannot find this conclusion clearly erroneous. All accommodation proposals, other than a simple shift change, involved significant costs to Chrysler: the proposal that Cook be allowed excused absences every Friday meant that he would be a part-time employee but would be paid full-time benefits (Chrysler showed that a typical benefit package was costly to the company; the cost of the benefit package lost because of being absent twenty percent of the time is over $1,500 per year); allowing a temporary part-time employee (or floater) to replace Cook every Friday night meant that Chrysler either had to forego using a floater elsewhere or hire another floater; absences affect the quality of work because there are more repairs than usual and lower efficiency when a floater is used on the line (there is no way to guarantee the same floater to replace Cook without hiring a new floater). There was also evidence that it was not possible to allow Cook to substitute working on a Sunday for a Friday; the collective bargaining agreement required over-time pay on weekends and the plant was normally closed on Sundays.[3]

Cook argues that this court's decision in *Brown v. General Motors Corp.,* 601 F.2d at 962, mandates that the additional costs must be quantifiable. We disagree. *Brown* stands only for the proposition that an employer's costs of accommodation "must mean present undue hardship, as distinguished from anticipated or multiplied hardship." *Id.* at 961 (quotations omitted). In contrast to the speculative evidence of future impact (calculated with an assumption that more employees would seek Fridays off for religious purposes) presented by General Motors in *Brown,* Chrysler presented evidence of tangible present costs of accommodation. The costs, although not ascertained with exactitude, were present and real. We note further that in *Brown,* neither party contended that the proposed accommodation contravened the collective bargaining agreement. *Id.* at 958.

■ With respect to the Union, its refusal to waive or modify the collective bargaining agreement's seniority provisions does not constitute unlawful discrimination. *Huston v. Local No. 93, International UAW,* 559 F.2d 477, 481 (8th Cir.1977). We affirm the district court's finding that the

---

**3.** Even if, as Cook claims, hiring a new floater is not necessary, it would be of no consequence. The apportioned cost of a floater's time, in combination with evidence that there is additional warranty costs associated with temporary workers, is enough to support the district court's decision.

Union did not breach any good-faith duties to represent Cook's interests.

III. CONCLUSION

For the reasons stated above, we affirm.