**Sandra K. MANN, Appellant,**

v.

**Anthony M. FRANK, Postmaster General, United States Postal Service, Appellee.**

No. 92–3030.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1993.

Decided Oct. 26, 1993.

Rehearing Denied Dec. 8, 1993.

F. Lawrence Warren, Kansas City, MO, argued, for appellant.

Jerry L. Short, Asst. U.S. Atty., Kansas City, MO, argued, for appellee.

Before McMILLIAN, WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Sandra K. Mann appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri in favor of the United States Postal Service. The district court held that: (1) Mann's employer, the United States Postal Service, had made reasonable accommodations for Mann's religious beliefs, (2) Mann's requested accommodations would result in undue hardship on the Postal Service, and (3) Mann failed to establish a claim of disparate treatment on the basis of her religious beliefs. *Mann v. Frank,* 795 F.Supp. 1438 (W.D.Mo.1992) (Judgment Order). For reversal, Mann argues the district court erred in reaching each of these conclusions. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

Mann became employed as a letter sorting clerk in 1980. Mann is a Seventh Day Adventist. Her religious beliefs prohibit work from sundown Friday to sundown Saturday. The terms and conditions of Mann's employment are determined in part by a national collective bargaining agreement between the Postal Service and the American Postal Workers Union, AFL–CIO. Under the collective bargaining agreement applicable to Mann, regular shift assignments at the Postal Service are determined by seniority. The overtime provisions of the collective bargaining agreement state that employees desiring to work overtime shall place their names on an Overtime Desired List (ODL). When the need for overtime arises, employees possessing the requisite skills who have listed their names on the ODL are selected in order of their seniority on a rotating basis. The collective bargaining agreement further provides that employees not on the ODL may be required to work overtime only if all available employees on the ODL have been utilized. In such a case, overtime is assigned in order of reverse seniority, with the first overtime shift assigned to the most junior employee. There is no requirement that employees sign the ODL, and employees are not disciplined for not signing the ODL.

Mann was originally scheduled to work Friday through Tuesday, but the Postal Service granted her request to have Fridays and Saturdays off. In 1981 Mann transferred into pay section 215 where she worked the primary sort on a Multiposition Letter Sorting Machine (MPLSM) which sorts letters by zip code. Although her regularly scheduled shift required her to work Wednesday through Sunday, Mann was able to switch her schedule through temporary schedule changes and annual leave so as to avoid working Fridays and Saturdays. During most of her employment in pay section 215, Mann placed her name on the ODL. On each of five occasions for which Mann was called to work overtime on her Sabbath, the Postal Service was able to grant Mann's requests to have another qualified employee on the ODL work in her place.

In September 1985 Mann requested and received a transfer into pay section 218 where all clerks memorized an elaborate scheme for a secondary sorting of letters. Mann's specific scheme was General Post Office Scheme 8, in which she pressed keys on the MPLSM to sort letters within zip code 64108 according to addresses. Clerks who operate the MPLSM in pay section 218 work for 30 minutes, followed by a 15–minute break where they collect mail and load it into the MPLSM for the next sorting session. In emergency situations, clerks key the

---

1. The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri. The case was tried to a magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

MPLSM for 45 minutes before the 15-minute collecting and loading mail break. The emergency practice is not authorized by the current collective bargaining agreement and frequently resulted in the filing of grievances against the Postal Service.

Mann's regularly assigned shift in pay section 218 did not include her Friday and Saturday Sabbath days. The only situation in which she could have been assigned to work on her Sabbath would be an overtime assignment. Only 8 clerks, including Mann, were qualified to operate the MPLSM machine at the pay section 218, scheme 8 level. Of these 8 clerks, only Mann and Maureen Higgins were not regularly scheduled to work the Friday night-Saturday morning shift. Thus, if the need for weekend overtime arose within the pay section 218, scheme 8 level, Mann and Higgins were the only qualified clerks not already scheduled to work. Mann signed the ODL for pay section 218. Higgins, in contrast to Mann, did not sign the ODL.

During the week of November 11, 1985, postal supervisor Robert Zajic detected the need for overtime during the Friday night-Saturday morning shift to prevent mail delay. According to the collective bargaining agreement, Mann was required to work this overtime shift because her name, in contrast to Higgins, was listed on the ODL. Zajic, knowing of Mann's religious constraints, asked Higgins to cover the overtime shift, but Higgins declined. Higgins claimed that she could not be forced to work until the ODL had been exhausted, and if she were forced to work before the ODL was utilized, she would file a grievance against the Postal Service for violating the terms of the collective bargaining agreement. Mann was instructed to work the overtime shift. Mann failed to report to work and instead phoned in reporting car trouble. Mann was unable to provide satisfactory documentation to the Postal Service to substantiate her claim of car trouble and failed to provide an alternative explanation for her absence. Consequently, Mann was charged absent without leave (AWOL) and suspended for 7 days without pay. Mann subsequently removed her name from the ODL. She has not been asked to work on her Sabbath since removing her name from the ODL.

Mann brought suit against the Postal Service in district court under Title VII of the Civil Rights Act of 1964. She alleged she was discriminated against on the basis of religion. The district court entered judgment for the Postal Service after a bench trial. 795 F.Supp. 1438. The district court found that the Postal Service had made reasonable accommodations for Mann's religious beliefs in the form of the collective bargaining agreement's seniority system and the voluntary ODL. The district court found that Mann's requested accommodations would result in undue hardship on the Postal Service. The district court further determined that Mann had not been subjected to disparate treatment because of her religious beliefs.

On appeal, Mann essentially contends that there is insufficient evidence to support the judgment. Mann further argues that the district court misapplied applicable law.

## II. DISCUSSION

### A. Reasonable Accommodation

■ In *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (*Hardison*), the Supreme Court addressed the extent of an employer's obligation to reasonably accommodate an employee's religious needs under § 701(j) of Title VII. Section 701(j) provides that employers must "reasonably accommodate" the religious beliefs or practices of their employees unless doing so would cause the employers to suffer undue hardship. 432 U.S. at 75, 97 S.Ct. at 2272. In *Hardison,* Hardison, a member of the Worldwide Church of God, attempted to change his work schedule in order to avoid working his Sabbath. Originally, Hardison had acquired enough seniority to avoid shift assignments conflicting with his Sabbath, but he relinquished this seniority when transferring to a new work location. His employer, Trans World Airlines (TWA), was unable to switch Hardison's new shifts so as to avoid his Sabbath because to do so would have violated a collective bargaining agreement. Hardison was discharged for his refusal to work on his Sabbath.

The Supreme Court held that TWA had made reasonable efforts to accommodate

Hardison's religious needs. *Id.* at 77, 97 S.Ct. at 2273. Although neither a collective bargaining agreement nor a seniority system may be employed to violate Title VII, the Court concluded that the duty to reasonably accommodate does not require an employer to jeopardize its overall labor scheme by compromising the contractual seniority rights of other employees as secured by a collective bargaining agreement. *Id.* at 79, 97 S.Ct. at 2274. "It is anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others." *Cook v. Chrysler Corp.,* 981 F.2d 336, 338 (8th Cir.1992) (*Cook*) (quoting *Hardison,* 432 U.S. at 81, 97 S.Ct. at 2275). The instant case presents a situation analogous to that presented in *Hardison.*

First, reasonably accommodating Mann would have compromised Higgins' contractual rights as secured by the collective bargaining agreement. The collective bargaining agreement provides a neutral seniority system for awarding shift assignments and a voluntary, seniority-based policy for assigning overtime work shifts (the ODL). The record showed that any further efforts by the Postal Service to reasonably accommodate Mann would have violated the terms of the collective bargaining agreement and contravened the procedures for assigning overtime shifts pursuant to the ODL. The record showed that the Postal Service approached both Higgins and the Union steward in an effort to reasonably accommodate Mann. Higgins was not willing to work overtime in place of Mann, and the Union was not willing to waive the filing of a grievance if Higgins had been forced to work overtime in Mann's place. The Postal Services' efforts satisfied Title VII's reasonable accommodation provision. *See Hardison,* 432 U.S. at 83 n. 14, 97 S.Ct. at 2276 n. 14.

Second, the seniority system and the voluntary ODL in the collective bargaining agreement themselves represented significant accommodations to Mann's religious needs. *Hardison* held that the seniority system in place at TWA established a neutral vehicle for minimizing occasions when an employee would be scheduled to work a Sabbath day, and, as such, the seniority system itself constituted a significant accommodation to the religious needs of employees. *Id.* at 78, 97 S.Ct. at 2273. *See also Cook,* 981 F.2d at 339 (holding that a seniority and absenteeism system itself provided reasonable accommodation to a Seventh Day Adventist employee's religious needs). In the instant case, the seniority system and the voluntary ODL represented a nondiscriminatory vehicle for minimizing the number of occasions when an employee would be called upon to work an overtime shift on a day that he or she preferred to have off.

**B. Undue Hardship**

■ *Hardison* held that any accommodation involving more than de minimis costs to the employer constitutes undue hardship. *Hardison,* 432 U.S. at 84, 97 S.Ct. at 2276. The district court found that Mann's suggested accommodations would have resulted in more than de minimis costs to the Postal Service. We upset the district court's fact findings of undue hardship and de minimis costs only if they are clearly erroneous. *Cook,* 981 F.2d at 339. Substantial evidence supported the district court's findings that the accommodation alternatives proposed by Mann would have caused the Postal Service undue hardship.

Mann's suggested accommodations included requiring another employee not listed on the ODL to work overtime in Mann's place, requiring employees already working the shift in question to increase their work rotations to absorb the effects of Mann's absence, or do without Mann entirely. Compelling Higgins to work involuntarily in Mann's place would have contravened the seniority and ODL provisions of the collective bargaining agreement and deprived Higgins of her contractual rights. This proposed accommodation constitutes undue hardship. *Hardison,* 432 U.S. at 81, 97 S.Ct. at 2275. Similarly, Mann's suggested accommodation that MPLSM clerks be required to work for 45 minutes before receiving their 15–minute break as opposed to the normal 30–minute shift in order to absorb Mann's absence would have constituted undue hardship. This practice would have violated the collec-

tive bargaining agreement and resulted in grievances being filed against the Postal Service. Mann's proposed accommodation that the Postal Service "just do without" her would have caused the Postal Service to suffer a significant loss in efficiency. "Any cost in efficiency or wage expenditures that is more than de minimis constitutes undue hardship." *Id.* at 84, 97 S.Ct. at 2277.

### C. Disparate Treatment

Mann also argues that the Postal Service subjected her to disparate treatment because of her religion in violation of Title VII. Mann alleges three instances of disparate treatment: (1) Mann was excused from working overtime in while pay section 215 but was denied such an allowance once she transferred to pay section 218; (2) the Postal Service excused a Seventh Day Adventist coworker from working overtime on his Sabbath but refused to excuse Mann on the day in question; (3) the Postal Service excused employees from working overtime for secular reasons but refused her requests to be excused for religious reasons. As the district court properly found, each of these claims must fail.

A disparate treatment case based on religion requires a plaintiff to show that she is, or was, treated less favorably than others because of her religious beliefs. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In a disparate treatment case, the plaintiff must prove that she is a member of a protected class and must compare her treatment to that of a similarly situated member of a non-protected class. *Hervey v. City of Little Rock*, 787 F.2d 1223, 1231 (8th Cir.1986). Here, the district court properly determined that Mann's first claim of disparate treatment could not succeed because Mann sought to compare herself with herself. Rather than supporting a claim of disparate treatment, the fact that the Postal Service excused Mann from working on her Sabbath before she transferred into pay section 218 supports the finding that the Postal Service made efforts in the past to reasonably accommodate Mann's religious needs. The different duties performed by employees in pay section 218 required specialized knowledge

and made it more difficult to excuse Mann from her shift. Mann's second claim of disparate treatment is as unique as her first. Mann, comparing herself to another Postal Service employee who was also a Seventh Day Adventist, claimed that she had been treated less favorably than her coworker. Mann cannot state a prima facie case of disparate treatment on the basis of religion by comparing her treatment to that of a member of the same protected class. *Id.* As her third claim, Mann contended that the Postal Service excused employees from working overtime for secular reasons but refused her requests to be excused for religious reasons. The evidence produced at trial showed that the Postal Service excused employees only for secular reasons which were nonrecurring occasions such as birthdays and anniversaries, but would not excuse a repeated and regular weekly absence such as the Sabbath exemption which Mann sought.

For the reasons stated above, we affirm the judgment of the district court.